## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TARA STANCO,

     Plaintiff,

     v.

DENNIS SEKELSKY, et al.,

     Defendants.

CIVIL ACTION NO. 3:22-cv-00573

(SAPORITO, M.J.)

## **MEMORANDUM**

This federal civil rights action for damages under 42 U.S.C. § 1983 commenced on April 20, 2022, when the plaintiff, Tara Stanco, appearing through counsel, filed the complaint in this matter. (Doc. 1.) The complaint names three defendants: (1) Dennis Sekelsky, a municipal police officer; (2) Shawn Lehey, a municipal police officer; and (3) Olyphant Borough, the municipality that employed Sekelsky and Lehey.

The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The defendants have filed a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. (Doc. 6.) The motion is fully briefed and ripe for decision. (Doc. 7; Doc. 9; Doc. 11.)

## I.   ALLEGATIONS OF THE COMPLAINT

The plaintiff, Tara Stanco, is a resident of Olyphant Borough. Her fiancé, non-party Jesse Beadle, resided with her in the same home. Their neighbors, non-parties Jakira Young and Trevor Cruzen, resided in the adjacent home. The two sets of neighbors had experienced some friction in the past, and Young and Cruzen had mounted cameras on their home pointing toward the backyard area behind both homes, recording both audio and visual data.

On April 9, 2021, Stanco had friends over to her home for a barbeque. At approximately 8:30 p.m. that evening, Stanco received a phone call informing her that her nephew had died, and family members gathered at Stanco's home were mourning and crying over the loss of their family member.

A family friend cleaned up recycling and carried it out to place in Stanco's recycling bin out front. Initially, the family friend accidentally placed the recycling in Young's recycling bin, but then he or she realized it was the wrong bin and moved it to Stanco's recycling bin.

At that time, Young exited the back of her home in a rage, stating: "I hear all you do back here. I heard all four hours of your day, and I

understand you are going through some family issues, but that gives you no right to put your trash in my bin."

Stanco attempted to deescalate the situation by apologizing for the mistake, stating she wanted to be friends, and asking to hug Young. Young refused the offer and then threatened a family friend, stating: "If you keep up your mouth when I'm not home, you're going to have problems. I hear everything said back here." Young then went back into her home.

Most of Stanco's family left, and only Stanco and her niece were left out back, sitting quietly by a fire pit. They then observed flashing lights in front of the home and went through Stanco's house to see what was happening. Stanco saw her neighbors, Young and Cruzen, on the front porch with police officers, Sekelsky and Lahey. Stanco opened the door and asked if everything was okay. She was asked by an unspecified police officer to come outside to his car to talk.

Stanco complied and learned that Young had told police that Stanco was being too loud. Stanco informed the police about what had been going on with her family, including the sudden loss of her nephew.

As Stanco attempted to go back into her home, Young stated under

her breath, "You're a f--king bitch." Stanco responded, "Well, f--k you too."

Stanco went inside the home and Beadle was behind her, closing the door as they went in so no confrontation would take place. The police officers grabbed Beadle and knocked Stanco, Beadle, and the officers themselves onto a bed inside the residence.

Stanco was tackled to the floor and then body slammed at least three times into the floor. Stanco was then held down by one officer while the other stood over her and touched her breast. Stanco yelled for the officer not to touch her. Stanco felt violated and feared she was going to be raped, so she kicked the officer standing over her. At this point, Stanco had already been placed in handcuffs.

While handcuffed, Stanco was again picked up and slammed to the floor on the left side of her face. Her head was beaten on the floor while she was punched in the right side of her face, causing injury to her face and teeth, which included three cracked and broken teeth. She also suffered an elbow injury and bruising. Ultimately, she required medical treatment for her injuries, which remains ongoing.

Stanco was transported to the Olyphant police department in custody. Officer Sekelsky subsequently filed a criminal complaint

supported by a probable cause affidavit reporting falsely that the police officers' actions were precipitated by Stanco striking Beadle in the face twice. Beadle was never struck by anyone except when police tackled him and Stanco.

In a criminal complaint filed on April 10, 2021, Sekelsky charged Stanco with the misdemeanor offenses of simple assault and resisting arrest, and the summary offenses of harassment (two counts), disorderly conduct by using obscene language, and public drunkenness. In his supporting affidavit of probable cause, Sekelsky reported a very different version of encounter, including a statement that Beadle requested that the officers help him get Stanco into the apartment, and that Sekelsky observed Stanco striking Beadle in the face twice before he grabbed her arm and sought to arrest her. Sekelsky reported that he was able to get one handcuff on her wrist while she was physically resisting, and Officer Lahey assisted with applying a handcuff to the other wrist. During this time, Sekelsky reported that he was kicked twice by Stanco. As noted above, Stanco alleges that Sekelsky's account of the encounter was false.

Ultimately, all criminal charges were withdrawn by prosecutors.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic

documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

The plaintiff has filed a thirteen-count complaint. In Count One, Stanco claims that Sekelsky and Lahey illegally entered her home and used excessive force against her, in violation of her Fourth Amendment right to be free from unreasonable seizure; in Count Two, she seeks to hold the Borough liable for this conduct as well. In Count Three, Stanco claims that Sekelsky and Lahey used excessive force against her while in custody as a pretrial detainee, in violation of her Fourteenth Amendment substantive due process rights; in Count Four, she seeks to hold the Borough liable for this conduct as well. In Count Five, Stanco claims that Sekelsky and Lahey arrested Stanco without probable cause, in violation of her Fourth Amendment right to be free from unreasonable seizure; in Count Six, she seeks to hold the Borough liable for this conduct as well. In Count Seven, Stanco claims that Sekelsky and Lahey initiated

criminal proceedings against her without probable cause, in violation of her Fourth Amendment right to be free from unreasonable seizure; in Count Eight, she seeks to hold the Borough liable for this conduct as well. In Count Nine, Ten, Eleven, Twelve, and Thirteen, Stanco asserts state-law claims of assault, battery, intentional infliction of emotional distress, and concerted tortious conduct against Sekelsky and Lahey.

The defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

**A. Punitive Damages**

The complaint seeks to recover punitive damages from all three defendants.

In Counts Two, Four, Six, and Eight, the plaintiff asserts § 1983 municipal liability claims against Olyphant Borough, based on the conduct of its employees Sekelsky and Lahey. In each of these counts, the plaintiff requests an award of punitive damages against the Borough. But it is well-established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Thus, the plaintiff's request for punitive damages will be dismissed with respect to the municipal defendant,

Olyphant Borough.

With respect to the individual defendants, Sekelsky and Lahey, the plaintiff asserts both § 1983 and state-law tort claims. She has requested an award of punitive damages in connection with each count. As we have previously recognized, "[w]hether an award of punitive damages is warranted involves a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed. Indeed, this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery." *Fiedler v. Stroudsburg Area Sch. Dist.*, 427 F. Supp. 3d 539, 558 (M.D. Pa. 2019) (citation and internal quotation marks omitted). Viewing the factual allegations of the complaint in this case in the light most favorable to the plaintiff, we find dismissal of the plaintiff's punitive damages demand at this, the pleadings stage, to be premature. Thus, the defendants' motion to dismiss will be denied with respect to the plaintiff's request for punitive damages against the individual defendants, Sekelsky and Lahey.

### B. § 1983 Municipal Liability

In Counts Two, Four, Six, and Eight, the plaintiff seeks to hold

Olyphant Borough liable for the allegedly unconstitutional conduct of its employees, defendants Sekelsky and Lahey. The complaint alleges, in conclusory fashion, that the Borough implemented policies mandating or encouraging the use of excessive force by its police officers in conducting arrests and detaining arrestees and encouraging the making of arrests and initiation of criminal charges without probable cause. It further alleges, also in conclusory fashion, that the Borough failed to adequately train and supervise its police officers with respect to police misconduct, and that the Borough failed to develop and implement adequate policies, practices, and procedures to prevent the use of excessive force or the making of arrests or initiation of criminal charges without probable cause.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. A borough is such a

municipality subject to liability as a "person" under § 1983. *McGreevy v. Stroup*, 413 F.3d 359, 367–69 (3d Cir. 2005).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249.

"A plaintiff must identify the challenged policy, attribute it to the [municipality or corporation] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of*

*Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Here, the complaint baldly asserts that the individual defendants acted pursuant to affirmative policies implemented by the Borough, but she has failed to allege any facts whatsoever to support this conclusory allegation.

Alternatively, the plaintiff has baldly asserted that the Borough failed to adequately train or supervise its police officers. "A municipality may be held liable under § 1983 for failure to train, monitor, or supervise, [but] only where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009) (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F. Supp. 2d 633, 645 (E.D. Pa. 2011) ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to a [municipality]'s failure to train, supervise and discipline its officers."). But here, the plaintiff has "neither identified the specific training the [Borough] should

have offered which would have prevented the deprivation of [her] constitutional rights nor established that such training was not provided." *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

Beyond vague assertions that existing policies were inadequate, *see Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (finding vague assertions of policy deficiencies insufficient to impose liability under Monell and § 1983), and conclusory allegations that a prior "pattern of similar constitutional violations" existed, the plaintiff points to no actual prior incidents from which we might reasonably infer that the Borough and its governing officials had actual or constructive knowledge of the purported policy deficiencies upon which the plaintiff's § 1983 *Monell* claims are premised. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("[A] single incident of

unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brown v. City of Pittsburgh*, 86 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that, where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy").

Ultimately, the complaint suggests that the Borough should be held liable because the allegedly unconstitutional conduct directed at Stanco by the police officers defendants could have been prevented if the Borough had simply implemented better policies. But policies are not deficient simply because they are not the best. *See Serafin v. City of Johnstown*, 53 Fed. App'x 211, 215 (3d Cir. 2002) ("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here."); *see also Koreny v. Smith*, Civil Action No. 17-371, 2018 WL 1141513, at *16 (W.D. Pa. Mar. 2, 2018) ("An assertion that a

constitutional injury could have been avoided with more or better training is insufficient.").

Accordingly, the plaintiff's § 1983 municipal liability claims, set forth in Counts Two, Four, Six, and Eight of the complaint, will be dismissed.

## C. Qualified Immunity

The defendants have also interposed a defense of qualified immunity with respect to the plaintiff's § 1983 claims against the individual defendants, Sekelsky and Lahey. In support, they argue only that the officers' conduct was reasonable because probable cause existed.

In the context of § 1983 false arrest and malicious prosecution claims,[1] it is well established that a police officer who "reasonably but

---

[1] The absence of probable cause is an element of the plaintiff's § 1983 false arrest claim (Count Five), *see Fisher v. Matthews*, 792 F. Supp. 2d 745, 776 (M.D. Pa. 2011) and her § 1983 malicious prosecution claim (Count Seven), *see Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016). However, the presence of probable cause alone is not dispositive of the plaintiff's § 1983 illegal entry claim (Count One), *see Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (holding that warrantless entry into a home requires probable cause *and* exigent circumstances), and the existence of probable cause is not at issue at all in the plaintiff's § 1983 excessive force claim (Count One), *see Snell v. City of York*, 564 F.3d 659, 672–73 (3d Cir. 2009). The defendants' briefs do not acknowledge these distinctions, but we note that their qualified immunity argument is based
*(continued on next page)*

mistakenly conclude[s] that probable cause is present" is entitled to qualified immunity. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). But as the Third Circuit has cautioned, "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 Fed. App'x 788, 791 n.3 (3d Cir. 2009) (per curiam). This is one those cases. Taking the allegations of the complaint as true, viewing them in the light most favorable to the plaintiff, we find dismissal on qualified immunity grounds at this time is inappropriate. The defendants are free to raise this qualified immunity defense again at summary judgment or at trial, if supported by the evidence.

### D. § 1983 Substantive Due Process

In Count Three, the plaintiff claims that Sekelsky and Lahey used excessive force against her while in custody as a pretrial detainee, and thus their conduct violated her substantive due process rights under the Fourteenth Amendment. The defendants seek dismissal of this count on the ground that the Fourth Amendment is the proper and *exclusive*

_____

solely on the probable cause issue, suggesting that they seek qualified immunity only with respect to the plaintiff's § 1983 false arrest and malicious prosecution claims.

vehicle for the plaintiff's § 1983 excessive force claims.

It is well established that "it is the Fourth Amendment, not the Fourteenth Amendment, which is the proper vehicle for addressing any unlawful pretrial deprivations of liberty incidental to criminal proceedings. *Meketa v. Kamoie*, 955 F. Supp. 2d 345, 365 (M.D. Pa. 2013) (citing *Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 674 (M.D. Pa. 2009)). This is the "more specific provision" or "explicit source rule," derived from the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994). *See Meketa*, 95 F. Supp. 2d at 365. "This rule has been extended to preclude both procedural and substantive due process claims where the rights underlying the same are derived from and otherwise protected by the Fourth Amendment." *Id.*

Accordingly, the plaintiff's § 1983 Fourteenth Amendment substantive due process claims, set forth in Count Three of the complaint, will be dismissed.

## E. § 1983 Unlawful Entry, False Arrest, and Malicious Prosecution

In Counts One, Five, and Seven, the plaintiff claims that Sekelsky and Lahey entered her home to arrest her without consent, a warrant, or probable cause and exigent circumstances, arrested her without probable

cause, and initiated criminal proceedings against her without probable cause. The consistent thread running through each of these claims is that the defendants lacked probable cause.

Here, the defendants rely on the charging officer's version of the facts, set forth in his affidavit of probable cause, which is attached to the complaint as an exhibit. In his affidavit, Sekelsky alleged that he observed Stanco strike Beadle in the face, precipitating the ensuing arrest and use of force. Sekelsky further alleged that Beadle requested Sekelsky's assistance to get Stanco into the house.

The complaint, however, alleges that Sekelsky fabricated the facts of his affidavit. The complaint alleges an entirely contradictory set of events, in which neither Stanco nor Beadle consented to the officers' entry into the home, and in which Stanco did not strike Beadle. Taking the factual allegations of the complaint as true, and viewing them in the light most favorable to the non-moving plaintiff, we are presented a scenario in which the defendant police officers entered Stanco's home without consent, probable cause, or exigent circumstances, and then arrested her and initiated criminal charges against her without probable cause to do so. *See Warren Gen. Hosp.*, 643 F.3d at 84.

Accordingly, the defendants' motion to dismiss will be denied with respect to the plaintiff's § 1983 unlawful entry, false arrest, and malicious prosecution claims against Sekelsky and Lahey, set forth in Counts One, Five, and Seven of the complaint.

### F. § 1983 Excessive Force

In Count One, the plaintiff claims that Sekelsky and Lahey used unreasonable and excessive force in effecting her arrest. The defendants' motion papers do not acknowledge or address this claim at all.

### G. State-Law Assault and Battery

In Counts Nine and Ten, the plaintiff claims that the use of force by Sekelsky and Lahey in the course of effecting her arrest constituted the common law torts of assault (Count Nine) and battery (Count Ten). In their motion to dismiss, the defendants contend that the use of force by the defendant police officers was privileged because it was reasonable and in the course of a lawful arrest.

As this court has previously summarized:

> The tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension. Battery requires proof that the defendant acted with the intent to cause harmful or offensive bodily contact

> with the person of the plaintiff and that such contact actually followed. Police officers are privileged to commit these torts using a reasonable amount of force when effectuating an arrest. Use of unreasonable or excessive force dissolves the privilege.

*Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 754 (M.D. Pa. 2009); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) ("Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force.").

Once again, the defendants' position relies on our acceptance of the charging officer's version of facts set forth in his affidavit of probable cause instead of the contrary facts alleged in the complaint. Taking the factual allegations of the complaint as true, and viewing them in the light most favorable to the non-moving plaintiff, we are presented a scenario in which the defendant police officers used an unreasonable and excessive amount of force to effectuate an unlawful arrest, and thus the common law privilege is either negated or inapplicable. *See Warren Gen. Hosp.*, 643 F.3d at 84.

Accordingly, the defendants' motion to dismiss will be denied with respect to the plaintiff's state-law assault and battery claims against

Sekelsky and Lahey, set forth in Counts Nine and Ten of the complaint.

### H. State-Law Intentional Infliction of Emotional Distress

In Count Eleven, the plaintiff claims that the conduct of Sekelsky and Lahey in effectuating her allegedly unlawful arrest constituted the common law tort of intentional infliction of emotional distress ("IIED"). With little elaboration, the defendants contend that that the complaint simply fails to allege facts to establish that the officers' conduct was sufficiently extreme and outrageous to constitute IIED.

As this court has previously recognized, the use of excessive force to effectuate an arrest does not necessarily rise to the level of extreme or outrageous conduct necessary to support an IIED claim. *See, e.g.*, *Dull*, 604 F. Supp. 2d at 755–56 ("In the instant matter, the allegedly improper arrests . . . are not sufficiently extreme and outrageous to support a claim for IIED. At most, defendants miscalculated the propriety of their law enforcement activities. Their conduct was not of such an appalling or reprehensible nature as to rise to the level of an IIED claim."). That said, however, the *Dull* decision considered an IIED claim with a developed record on summary judgment, rather than at the pleadings stage. Taking the factual allegations of the complaint as true, and viewing them in the

light most favorable to the non-moving plaintiff, we find the facts alleged in the complaint sufficient to plausibly state an IIED claim.

Accordingly, the defendants' motion to dismiss will be denied with respect to the plaintiff's state-law IIED claims against Sekelsky and Lahey, set forth in Count Eleven of the complaint.

## I.  State-Law Concerted Tortious Action

In Counts Twelve and Thirteen, the plaintiff claims that Sekelsky and Lahey each acted in concert with the other to batter Stanco. The defendants contend that the complaint fails to state a concerted tortious action claim, however, because it merely restates the elements of the tort without any substantive factual allegations in support.

Although Counts Twelve and Thirteen themselves do not recite supporting facts, each includes a paragraph incorporating by reference all facts previously pleaded in the complaint. Thus, we consider the facts alleged throughout the complaint in addressing this cause of action.

Pennsylvania follows Section 876 of the Restatement (Second) of Torts, which provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or

> pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Burnside v. Abbot Laboratories*, 505 A.2d 973, 982 (Pa. Super. Ct. 1985) (recognizing "concert of action" liability under subsection (a)); *see also Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 85–89 (Pa. 2023) (recognizing "aiding and abetting" liability under subsection (b)).[2]

Under *Burnside*, "subsection (a) requires proof of an explicit or tacit agreement" to constitute concerted action or common design. *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1293 (3d Cir. 1994). The complaint here does not allege any facts to support liability under subsection (a).

Subsection (c) requires proof of breach of duty to a third person. The complaint here does not allege any facts to support liability under subsection (c).

---

[2] We are unaware of any Pennsylvania court decision considering whether a cause of action exists under subsection (c). We do not reach the question of whether Pennsylvania would recognize such a cause of action, however, because the complaint here does not allege any facts to support such a claim.

But subsection (b) permits the imposition of liability when a defendant provides "substantial assistance or encouragement" to the primary tortfeasor. "A defendant who intentionally and substantially supports and participates in an offensive touching may be held liable for assault and battery even if he does not personally commit the touching." *Fleming v. Scruggs*, 465 F. Supp. 3d 720, 746 (E.D. Mich. 2020) (considering a similar aiding-and-abetting-battery claim against a police officer under Restatement (Second) § 876(b)); *see also Doe v. Liberatore*, 478 F. Supp. 2d 742, 759 (M.D. Pa. 2007) (considering aiding-and-abetting liability under § 876(b) in connection with sexual battery and citing state court cases considering aiding-and-abetting liability). Once again, taking the factual allegations of the complaint as true, and viewing them in the light most favorable to the non-moving plaintiff, we find the facts alleged in the complaint sufficient to plausibly state an aiding-or-abetting-battery claim against each of the individual police officer defendants, based upon each officer's participation or substantial assistance in the allegedly unprivileged battery committed by the other in connection with an allegedly unlawful arrest or unreasonable use of force.

Accordingly, the defendants' motion to dismiss will be denied with respect to the plaintiff's state-law concerted action / aiding and abetting claims against Sekelsky and Lahey, set forth in Counts Twelve and Thirteen of the complaint.

## J. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, it is clear that amendment would be futile with respect to dismissal of the plaintiff's § 1983 substantive due process claims and her punitive damages claims against Olyphant Borough, but it is not clear that amendment would be futile with respect to dismissal of the remainder of her § 1983 municipal liability claims against the Borough. Therefore, the plaintiff will be granted leave to file an amended complaint.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted in part and denied in part. The plaintiff's § 1983 substantive due process claims, her punitive damages claims against Olyphant Borough, and her § 1983 municipal liability claims against Olyphant Borough will be dismissed. The remainder of the plaintiff's claims will be permitted to proceed. The plaintiff will be permitted to attempt to cure any pleading deficiencies and file an amended complaint. If the plaintiff fails to timely file an amended complaint, however, the defendants will be directed to answer the original complaint and the case will proceed with that as the operative pleading.

An appropriate order follows.

Dated: March 20, 2023                    **_s/Joseph F. Saporito, Jr._**
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge